

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 DEC 19 PM 2: 27

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Peter J. Martinez*
*Assistant United States Attorney*
*Peter.Martinez@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201*

*DIRECT: 410-209-4984*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

October 30, 2019

Richard Bardos, Esq.
Schulman, Hershfield & Gilden, P.A.
One East Pratt Street, Suite 904
Baltimore, Maryland 21202

      Re:    <u>United States v. Xiaoying Xu</u>
             Criminal No. JKB-19-202

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to your client, Xiaoying Xu, by the United States Attorney's Office for the District of Maryland. If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by November 6, 2019, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

      1.    The Defendant agrees to plead guilty to Counts One and Nine of the indictment pending against her, which charge her with conspiracy to commit an offense the United States, in violation of 18 U.S.C. § 371, and mail fraud, in violation of 18 U.S.C. § 1341, respectively. The Defendant admits that she is, in fact, guilty of these offenses and will so advise the Court.

<u>Elements of the Offenses</u>

      2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

<u>Count One: Conspiracy to Commit an Offense Against the United States</u>

      a.    that during the time period alleged in the indictment, two or more persons agreed to commit an offense against the United States, namely mail fraud, in violation of 18 U.S.C. § 1341;

      b.    that the Defendant knew the unlawful purpose of the agreement and willfully joined it; and

c. that at least one member of the conspiracy performed an overt act to further the agreement's unlawful purpose.

Count Nine: Mail Fraud

a. that during the time period alleged in the indictment, the Defendant knowingly devised a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises;

b. that the Defendant acted with intent to defraud; and

c. that in execution of the scheme to defraud, the Defendant knowingly caused to be delivered by mail or by any private or commercial interstate carrier, according to the direction thereon, any matter or thing.

### Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 USC 371 | Ineligible for probation | 5 years | 3 years | $250,000 | $100 |
| 9 | 18 USC 1341 | Ineligible for probation | 20 years | 3 years | $250,000 or 2x gross gain or loss | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons shall have sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise pursuant to 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

2

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified. They would also have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose. The Defendant would also have the right to refuse to testify.

If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

  e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights such as the right to vote, possess a firearm and to hold certain licenses.

  i. The Defendant has the right to have her case presented to a grand jury, which would decide whether there is probable cause to return an indictment against her. By agreeing to proceed by way of information, the Defendant is giving up her right to have this case presented to a grand jury, and she understands that the charges against her will be filed by the United States Attorney instead of by a grand jury.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

  a. The Defendant's base offense level is 7 pursuant to United States Sentencing Guidelines § 2B1.1(a)(1).

4

b.  The Defendant's base offense level should be increased by 16 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(I) because the loss in this case was more than $1.5 million but less than $3.5 million.

c.  The Defendant's base offense level should be increased by an additional 2 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(10)(b) because a substantial part of the fraudulent scheme in which the Defendant participated was executed from outside the United States. The Defendant's adjusted offense level is therefore 25, prior to any reduction for acceptance of responsibility.

d.  This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b) if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this agreement in any way.

7.  There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.  Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range. The Defendant agrees to provide notice to the Court, the United States Probation Officer and government counsel at least ten days in advance of sentencing of any facts or issues he intends to raise pursuant to 18 U.S.C. § 3553(a).

## Obligations of the Parties

9.  At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence and period of supervised release taking into account the guideline calculation and any appropriate factors under 18 U.S.C. § 3553(a). This Office will request an order of restitution, as set forth below. In light of that financial penalty, this Office will recommend that the Court not impose a criminal fine. This Office and the Defendant reserve the

right to bring to the Court's attention all information concerning the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing.

### Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statutes setting forth the offense to which the Defendant is pleading guilty are unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statutes, to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Restitution

11. The Defendant agrees to the entry of a restitution order for the full amount of the victims' actual losses, namely $2,322,845. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Forfeiture

12. The Defendant understands that the Court will enter an order of forfeiture as part of the Defendant's sentence, and that the order of forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in items that constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities. Specifically as a consequence of the Defendant's plea of guilty to Counts 1 and 9 charging violations of 18 U.S.C. §§ 371 and 1341, the Court will order the forfeiture of all proceeds obtained by the Defendant or retained as a result of the fraudulent scheme in which the Defendant participated.

14. The Defendant agrees to consent to the entry of an order of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

18. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this agreement.

19. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this agreement; and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea if the Court finds that the Defendant breached the agreement.

## Court Not a Party

20. The Court is not a party to this agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

21. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Peter J. Martinez
Martin J. Clarke
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12·19·19
Date

Xiaoying Xu, Defendant

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12·19·19
Date

Richard Bardos, Counsel for Defendant

9

## **ATTACHMENT A**

### **STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant admits that she knowingly joined a scheme to defraud e-commerce consumers and to obtain money and property belonging to those consumers by means of materially false and fraudulent pretenses, representations, and promises—that is, by falsely representing that various products offered for sale on e-commerce marketplaces, specifically jewelry and sunglasses, were authentic Pandora and Ray-Ban products, respectively, when, in truth, the products had counterfeit marks.

The Defendant admits that between in or about August 2016 and in or about April 2019, she knowingly conspired with others, including individuals in China, to execute the above-referenced scheme to defraud and, for the purpose of executing the scheme to defraud, to knowingly cause to be delivered by mail and commercial interstate carrier packages containing jewelry and sunglasses with counterfeit Pandora and Ray-Ban marks, in violation of 18 U.S.C. § 1341. It was the object of the conspiracy that the Defendant and others would enrich themselves by importing, selling, and trafficking in counterfeit Pandora jewelry and Ray-Ban sunglasses that were falsely represented as authentic trademarked products available for sale on e-commerce platforms.

The Defendant admits that she participated in the importation and smuggling of counterfeit Pandora jewelry and Ray-Ban sunglasses from Hong Kong and mainland China to the United States. The Defendant used her residence in West Covina, California, as well as offices in El Monte, California and Alhambra, California, as destination points for imported shipments of counterfeit goods. The Defendant admits that on or about the dates listed below, she imported and attempted to import the following shipments of counterfeit goods:

| Date | Origin | Consignee | Cargo Description | Counterfeit Item |
|---|---|---|---|---|
| 3-18-17 | Hong Kong | Xiaoying Xu West Covina, CA | Sample of Beads | Pandora jewelry |
| 3-30-17 | Hong Kong | Xiaoying Xu West Covina, CA | Fashion Alloy Beads 530PCS | Pandora jewelry |
| 12-16-17 | China | Xiaoying Xu Alhambra, CA | Beads | Pandora jewelry |
| 3-28-18 | Hong Kong | Xiaoying Xu West Covina, CA | Plastic Frame Sample | Ray-Ban sunglasses |
| 9-6-18 | Hong Kong | Xiaoying Xu El Monte, CA | Plastic Frame | Ray-Ban sunglasses |
| 9-15-18 | Hong Kong | Xiaoying Xu West Covina, CA | Bead | Pandora jewelry |

10

| 2-2-19 | Hong Kong | Xiaoying Xu<br>West Covina, CA | Plastic Frame | Ray-Ban sunglasses |

After receiving these and other shipments of counterfeit goods, the Defendant repackaged the goods and mailed them to unsuspecting customers, who had purchased the goods on e-commerce marketplaces. Members of the conspiracy obtained funds from the customers using fraudulently acquired accounts, opened in the names of other people, at a global online payment company. The global online payment company transferred funds to members of the conspiracy through (i) electronic transfers to bank accounts associated with members of the conspiracy; and (ii) checks sent to the Defendant's address. The Defendant and others deposited the checks at automated teller machines into bank accounts opened by co-conspirators.

The Defendant admits that on or about January 26, 2019, she packaged and shipped a counterfeit Pandora-branded charm from a United States Post Office in City of Industry, California, to a victim named D.P. in Pasadena, Maryland. Victim D.P. had purchased the charm the previous day on an e-commerce marketplace for $58. At the time of the purchase, Victim D.P. believed that the charm was an authentic Pandora-branded product, when, in truth and fact, the charm was counterfeit. The retail price of the authentic Pandora-branded charm was $150.

Following the purchase by Victim D.P., the proceeds of the sale were transferred to an account at a global online payment company opened by Victim J.L., but fraudulently taken over by members of the conspiracy. The global online payment company then sent a check to an office building located at 388 East Valley Boulevard in Alhambra, California, where the Defendant's co-conspirator, Yiwen Zhu, was employed. The Defendant admits that on or about January 18, 2018, she and Zhu deposited the check at an automated teller machine into a bank account opened by a co-conspirator.

The Defendant admits that as a result of her fraudulent conduct, as well as the reasonably foreseeable fraudulent conduct of her co-conspirators, members of the conspiracy sold $2,322,845 worth of fraudulent Pandora and Ray-Ban-branded products to unsuspecting customers on e-commerce marketplaces, causing a loss to the customers (as well as to Pandora and Ray-Ban) of that amount.

SO STIPULATED:

_____
Peter J. Martinez
Assistant United States Attorney

_____
Xiaoying Xu
Defendant

_____
Richard Bardos
Counsel for Defendant

11